## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| SHANNON WELLS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:17-cv-00604-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION[1]

Plaintiff Shannon Wells ("Wells") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB") as well as her application for supplemental security income ("SSI"). (Doc. 1). Wells timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

### I. Factual and Procedural History

On September 18, 2014, Wells protectively filed applications for a period of disability and DIB as well as for SSI, alleging she became unable to work beginning August 11, 2014. (Tr. 58, 229-38). The Agency initially denied Wells' applications on December 31, 2014. (Tr. 58, 168-78). Thereafter, Wells filed a written request for a hearing before an Administrative Law Judge

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 17).

("ALJ"). (Tr. 58, 179). Wells appeared and testified at a hearing held on September 14, 2015, in Gadsden, Alabama. (Tr. 58, 78-130). After the hearing, the ALJ denied Wells' claim on November 17, 2015. (Tr. 55-77). Wells sought review by the Appeals Council, but it declined her request on February 13, 2017. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On April 13, 2017, Wells initiated this action. (*See* doc. 1).

Wells was thirty-eight-years-old at the time of the hearing. (Tr. 70). Wells has at least a high school education and can communicate in English. (Tr. 71). Wells' past relevant work includes being a home health aide, an assistant manager, an auto detailer, and a sales attendant. (Tr. 70).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. "Substantial evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991). However, the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

by the [Commissioner];

(4)     whether the claimant can perform his or her past work; and

(5)     whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Wells met the insured status requirements of the Social Security Act through December 31, 2016 (her date last insured or "DLI"), and that Wells had not engaged in substantial gainful activity from her alleged onset date of August 11, 2014. (Tr. 61). At Step Two, the ALJ found Wells has the following severe impairments: arthritis, scoliosis, anxiety, and depression. (*Id.*). At Step Three, the ALJ found Wells did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 62-65).

Before proceeding to Step Four, the ALJ determined Wells' residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Wells had the RFC to perform sedentary work as defined

in 20 C.F.R. §§ 404.1567(a) and 416.967(a) except Wells is unable to drive. Wells is unable to have exposure to uneven terrain. Wells is unable to climb. Wells is unable to have exposure to unprotected heights. Wells is unable to operate hazardous machinery. Wells is able to stoop and crouch occasionally. Wells is able to perform simple, repetitive, non-complex tasks. Wells is able to use her upper extremities for pushing and for pulling occasionally. Wells is able to use her lower extremities for pushing and/or pulling or for foot controls occasionally. (Tr. 66-70).

At Step Four, the ALJ determined Wells is unable to perform any past relevant work. (Tr. 70). At Step Five, the ALJ determined, based on Wells' age, education, work experience, and RFC, jobs exist in significant numbers in the national economy Jones could perform. (Tr. 71-72). Therefore, the ALJ determined Wells has not been under a disability and denied Wells' claim. (Tr. 72).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or because improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Wells*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Here, substantial evidence supports the ALJ's determination Wells failed to demonstrate a disability, and the ALJ applied the proper standards to reach this conclusion. Wells challenges the Commissioner's decision on the following specific grounds: (1) the ALJ is biased against claimants and such bias affected his decision in this case; (2) the ALJ failed to accord proper

weight to the opinions of treating physician Dr. Odeane Conner and consulting psychologist Dr. Jack Bentley, and failed to show cause for rejecting Dr. Conner's opinion; (3) the decision was not based on substantial evidence when submissions to the Appeals Council are considered, as the Appeals Council failed to review new, material, and chronologically relevant submissions solely because the records were dated after the date of the ALJ's decision; (4) the ALJ failed to state adequate reasons for finding Wells' allegations not credible; and (5) the ALJ failed to develop the record concerning the side effects of Wells' pain medication. (Doc. 12 at 2).

## A. Allegations of ALJ Bias

Wells contends the ALJ is biased against social security claimants and that the ALJ's bias affected his decision in her case. (Doc. 12 at 30). Wells further asserts the ALJ has a "pattern and practice [of] substituting his opinion for the opinions of medical experts." (*Id.*). In support of her argument, Wells contends the ALJ disregarded her treating physician's opinion, has a low rate of favorable decisions, and has previously been reversed by federal courts numerous times. (*Id.* at 30-37; doc. 18 at 1-3).

As the Eleventh Circuit explained in *Miles v. Chater*,[4]

> The ALJ plays a crucial role in the disability review process. Not only is he duty-bound to develop a full and fair record, he must carefully weigh the evidence, giving individualized consideration to each claim that comes before him. Because of the deferential standard of review applied to his decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the integrity of the system.

84 F.3d 1397, 1401 (11th Cir. 1996). When a party asserts a claim based on bias, there is a presumption that the administrative adjudicator, here the ALJ, is unbiased and exercises his decision-making authority with honesty and integrity. *See Schweiker v. McClure*, 456 U.S. 188,

---

[4] Both parties cite *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996), as articulating the ALJ's role and the importance of impartiality. (Doc. 12 at 30 & doc. 15 at 8).

195 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). To rebut this assertion, the party asserting bias must show a conflict of interest or some other specific reason for the disqualification, *Schweiker*, 456 U.S. at 195, and the evidence of such must be convincing that "a result of actual bias or prejudgment" is present, *Withrow*, 421 U.S. at 47.

Wells' only case-specific reason for the ALJ's disqualification based on bias is that he disregarded the opinion of her treating physician. (Doc. 12 at 37). That claim will be discussed *infra*, based on the specific requirements placed on ALJs when evaluating a treating physician's opinion.

To the extent Wells alleges a pattern and practice of bias and points to statistics, "an ALJ's number of reversals in district court and the percentage of disability cases the ALJ approves are generally assumptions that cannot survive the presumption of non-bias." *Conteras-Zambrano v. Social Security Admin., Comm'r*, -- F. App'x --, 2018 WL 618420, *2 (Jan. 30, 2018).[5] Furthermore, there is no indication any alleged bias influenced the outcome in this case because, as explained *infra*, the ALJ satisfied his duty to "develop a full and fair record" and to "carefully weigh the evidence, giving individualized consideration to each claim." *See id.* (quoting *Miles*, 84 F.3d at 1401). Wells' claim alleging bias fails.

## B. Weight Given to Opinions from Dr. Conner and Dr. Bentley

### 1. Dr. Odeane Conner's Opinion

Wells alleges the ALJ failed to accord proper weight to her treating physician Dr. Odeane

---

[5] Wells cites and provides block quotations from the district court decision in *Conteras-Zambrano*, which rejected a bias-based argument directed at the same ALJ. (Doc. 12 at 38). In her brief, Wells notes that the decision is on appeal in the Eleventh Circuit. Thereafter, the Eleventh Circuit issued its decision on January 30, 2018, prior to Wells' submission of her reply brief. (*See* doc. 18). Wells does not address that decision in her reply brief. (*Id.* at 1-3). Notably, the Eleventh Circuit affirmed the district court's decision in *Contreas-Zambrano*. *See Conteras-Zambrano*, -- F. App'x --, 2018 WL 618420 at *3.

Conner's opinion and failed to articulate good cause for discounting his opinion. (Doc. 12 at 38-41). Specifically, Wells contends Dr. Conner opined that Wells was disabled and that his opinion was substantiated by record evidence. (*Id.* at 38-39).

The ALJ bears the responsibility for assessing the extent of a claimant's work-related abilities and limitations based on all relevant evidence in the record, including the medical opinions submitted by any treating, examining, or non-examining source. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ must give the opinion of a treating physician substantial or considerable weight, unless there is "good cause" to reject the opinion, such as where the opinion is conclusory, not bolstered by the evidence, or inconsistent with the record. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). The ALJ must articulate the reasons for giving less weight to a treating physician's opinion, and failure to do so is reversible error. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Standing alone, a non-examining physicians report cannot constitute substantial evidence to contradict a treating source's opinion. *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). However, state agency medical and psychological consultants' opinions may be entitled to greater weight than treating source opinions if such opinions are better supported by evidence in the record. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011). To this end, the court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as [the ALJ] articulates a specific justification for it." *Hunter v. Comm'r of Soc. Sec.*, 808 F.3d 818, 823 (11th Cir. 2015).

The opinion at issue is a one-page March 18, 2014 assessment Dr. Conner completed for Wal-Mart Stores, Inc., Wells' employer at the time. (Tr. 629). The form indicates that Wells had

requested an accommodation, and her employer needed a medical assessment from her provider. (*Id.*). Contrary to Wells' allegation, nowhere on the form does Dr. Conner opine Well is disabled. (*Id.*). Instead, where the form prompts for "diagnosis," he responds, "cervical spine pain with radiculopathy, mechanical thoracic spine pain, low back pain with radiculopathy secondary to scoliosis, [fibromyalgia], sacroiliitis." (*Id.*). He checks the box indicating her prognosis is "fair" as well as boxes indicating the following activities are affected: bending, concentrating, lifting, performing manual tasks, standing, walking, and working. (*Id.*). To describe how the condition(s) limits or impairs Wells, Dr. Conner only writes "pain limits the functional capabilities." (*Id.*). When prompted to "describe in specific detail how each activity checked is affected," including a request for "[q]uantifiable measures such as, "can stand for 10 minutes out of every hour" or "can lift up to 10 pounds frequently," Dr. Conner only responds that Wells "needs [a] F[unctional] C[apacity] E[valuation]." (*Id.*).

The ALJ articulated that he assigned "little weight" to Dr. Conner's March 18, 2014 assessment. (Tr. 69). The ALJ then explained his reasons for doing so, which included the fact the assessment predated the alleged onset date of disability, noted that Dr. Conner indicated Wells needed a functional capacity evaluation, and explained that the evidence of record (since the alleged onset date of disability) does not show symptoms or limitations at a severity that would preclude work activity within the RFC. (*Id.*).

Wells' allegation that Dr. Conner opined that she was disabled (doc. 12 at 38) is misleading, as the assessment does not specify the severity of the limitations to the functional capacities identified. (Tr. 629). Furthermore, the ALJ articulated good cause for discounting Dr. Conner's opinion, and the ALJ's decision to accord the opinion little weight is supported by substantial evidence. First, Dr. Conner's assessment is from five months prior to the alleged

disability onset date. (Tr. 229-38, 629). As the Commissioner points outs, Wells' alleged disability onset date coincides with the date she stopped working at Wal-Mart. (Doc. 15 at 12 citing tr. 84-85, 229, 262). Thus, the assessment is from a time period when Wells was working and not asserting that she was disabled. To the extent Wells argues the assessment has some bearing on her condition five months later and beyond, there is nothing in the assessment that explains the severity of the stated limitations on her functional capabilities and, instead of details, Dr. Conner includes a statement that Wells needs a functional capacity evaluation, rendering the opinion conclusory and incomplete. (Tr. 629). The regulations provide that "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). Here, there is little explanation for the vague limitations imposed. Additionally, the need for a functional capacity evaluation demonstrates Dr. Conner was uncertain about the limitations he imposed and needed further evaluation to be specific. (Tr. 629). This type of uncertainty in an opinion relieves an ALJ from the requirement to defer to that opinion. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011). The ALJ expressly recognized these shortcomings. (Tr. 69).

The ALJ also found the record evidence since the alleged disability onset date does not show symptoms or limitations at a severity that would preclude work activity within the RFC.[6] (Tr. 69). The record indicates, despite the diagnoses contained in Dr. Conner's assessment, Wells received only conservative treatment and received pain medicine that she reported was working

---

[6] The ALJ limited Wells to a reduced range of sedentary work, noting she is unable to drive, have exposure to uneven terrain, climb, be exposed to unprotected heights, and operate hazardous machinery. (Tr. 66-70). He further limited Wells to stooping and crouching occasionally; using her upper extremities for pushing and for pulling occasionally; and using her lower extremities for pushing and/or pulling or for foot controls occasionally. (Tr. 66-70). He also limited Wells to performing simple, repetitive, non-complex tasks. (*Id.*).

on multiple occasions. (Tr. 68, 450, 452, 559, 561, 563, 565, 568, 570, 572, 575, 577, 579). Although Wells argues MRI imaging supports Dr. Conner's opinion (doc. 12 at 38-39), the ALJ discussed multiple MRI results that show only mild to moderate degenerative disc disease and arthritis. (Tr. 61, 539, 541, 596, 599-601). Likewise, although Wells generally argues the opinion is substantiated by Dr. Conner's medical records, those records show that Wells often exhibited normal gait, ranges of motion within functional limits, normal muscle tone, negative straight leg raises, and negative sciatic stretch tests. (Tr. 68, 451, 453, 560, 562, 564, 569, 571, 573, 576, 578, 580). To the extent Wells' range of motion was outside normal limits, she occasionally exhibited "mildly or moderately" decreased lumbar range and "mildly" decreased cervical range of motion. (Tr. 451, 453, 562, 564, 566, 569, 571, 576, 578, 580). Furthermore, Dr. Conner's March 18, 2014 opinion is inconsistent with Dr. Sathyan Iyer's November 22, 2014 physical examination (tr. 68, 540-41, 543-44) and also inconsistent with notes from the consulting psychological examiner and Wells' treating psychiatrist, who noted Wells had little difficulty ambulating, walked with a non-ataxic gait, and sat comfortably (tr. 62, 68, 535, 548, 555-56). The ALJ's decision to accord Dr. Conner's March 18, 2014 opinion little weight is supported by substantial evidence, and the ALJ articulated adequate reasons for doing so.

### 2. Dr. Jack Bentley's Opinion

Wells next contends the ALJ failed to accord proper weight to the opinion of Dr. Jack Bentley, the Commissioner's consulting psychologist. (Doc. 12 at 42-47). Wells further argues that, by failing to accord proper weight to Dr. Bentley's opinion, the ALJ improperly substituted his judgment for that of a medical expert. (*Id.*).

In contrast to opinions from treating physicians, an ALJ is not required to defer to an examining physician's report. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). However, an ALJ

must consider all medical opinions in a claimant's case record, together with other relevant evidence. *McClurkin v. Social Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citing 20 C.F.R. § 404.1527(b)). The ALJ is required to "state with particularity the weight given to different medical opinions[, including those from non-treating physicians,] and the reasons therefor" so that the reviewing court can determine if the ALJ's decision was rational and supported by substantial evidence. *Id.* (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)). "Therefore, when the ALJ fails to state with at least some measure of clarity the grounds for his decision, [the court] will decline to affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quoting *Winschel*, 631 F.3d at 1179).

Here, the ALJ stated he accorded "little weight" to Dr. Bentley's opinion. (Tr. 69). The ALJ then explained his reasoning: "Much of Dr. Bentley's opinion appears to be based on [Wells'] subjective complaints []. Furthermore, Dr. Bentley's opinion is not consistent with his own mental status examination findings, which shows that [Wells] had no limitations in her receptive or expressive communication skills. She had a reasonably cheerful mood, no obvious evidence of anxiety or restlessness and was able to recall two of three objects after a five-minute delay. She was able to recite six digits forward and four digits backwards, and could spell 'world' forward and backwards." (*Id.*, *see* tr. 546-550).

The record shows that the ALJ did not improperly substitute his judgment for that of Dr. Bentley. Instead, the ALJ noted the above-referenced issues with Dr. Bentley's opinion and gave greater weight to opinions from Dr. Huma Khustro, Wells' treating psychiatrist and Dr. Robert Estock, the state agency psychiatrist. (Tr. 69-70). The ALJ's stated reasons for giving Dr. Bentley's opinion little weight – that his opinions were not consistent with his own mental status examination findings and he appeared to base his opinion primarily on Wells' subjective

complaints – are justifiable and supported by substantial evidence. *See Carter v. Comm'r of Soc. Sec.*, 411 F. App'x 295, 299 (11th Cir. 2011). Although Dr. Bentley explained that his opinion was based on Wells' history of mood swings, irritability, short attention span, and periodic rage behavior, he admitted none of the symptoms were readily apparent during the interview. (Tr. 549). Dr. Bentley also reported Wells appeared "reasonably stable on medications being prescribed to treat her psychiatric difficulties" and presented with a cheerful mood and no obvious evidence of anxiety. (*Id.* at 548-49). Dr. Bentley also found Wells' memory intact and noted she had no limitations in her communications skills during the examination. (*Id.* at 548). This provides substantial evidence to support the ALJ's decision to accord Dr. Bentley's opinion little weight.

Furthermore, Wells fails to point to any specific part of Dr. Bentley's opinion that she thinks should have been accorded more weight, and also fails to identify any of the ALJ's reasons for according Dr. Bentley's opinion little weight that she takes issue with. (Doc. 12 at 42-47, doc. 18 at 6-7). A review of the record shows the ALJ stated with particularity the weight given to Dr. Bentley's opinion and the reasons therefore. And, as explained above, those reasons are supported by substantial evidence.

### C. Evidence Submitted to the Appeals Council

Wells alleges two errors related to the proceedings before the Appeals Council. (Doc. 12 at 47, 52-60, doc. 18 at 7, 10-13). First, Wells alleges that "[t]he ALJ's decision was not based on substantial evidence when the submissions to the appeals council are considered." (Doc. 12 at 47, doc. 18 at 7). Stated another way, Wells contends the records submitted to the Appeals Council undermine the ALJ's decision. Second, Wells alleges "[t]he Appeals Council failed to review [] submissions which were new, material, and chronologically relevant, but which were dated after the date of the ALJ['s] decision solely because the records were dated after the date of the decision,

without considering if the submissions were chronologically relevant."  (Doc. 12 at 52-60, doc. 18 at 10-13).

### 1. The Evidence the Appeals Council Considered Does Not Undermine the Substantial Evidence Supporting the ALJ's Decision

After the ALJ's decision, Wells submitted evidence to the Appeals Council.  (Tr. 342-48). The Appeals Council considered the following evidence as part of the record:

- Pain and Wound Care Center, dated August 31, 2015 – November 2, 2015 (Tr. 5, 630-39)
- Rehab Partners, dated May 12, 2009 – January 19, 2011 (Tr. 5, 640-46)
- A statement from Dr. Feist, dated February 20, 2016 (Tr. 5, 647).

The Appeals Council explained that it considered this evidence, but found that it did not find a basis for changing the ALJ's decision.  (Tr. 2).  Wells also submitted two other records (tr. 8-41), which the Appeals Council declined to consider.  That decision will be addressed in the next subsection.

A claimant may present new evidence at each stage of the administrative process, including to the Appeals Council.  *See* 20 C.F.R. §§404.900(b), 416.1400(b); *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007).  The Appeals Council, however, is only required to consider such evidence if it is new, material, and chronologically relevant.  20 C.F.R. §§ 404.970, 416.1470. When the Appeals Council considers newly submitted evidence, but then denies review (as it did here) the reviewing court must consider whether the new evidence renders the ALJ's decision erroneous by undermining the substantial evidence supporting the ALJ's decision.  *See Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 785 (11th Cir. 2014); *Ingram*, 496 F.2d 1262.

Wells provides little argument to show how this new evidence undermines the substantial evidence supporting the ALJ's decision.  Wells asserts the records from Pain and Wound Care Center (tr. 630-39) "show continued treatment for severe chronic pain."  (Doc. 12 at 47).  Wells also asserts "[t]he report from Dr. Feist shows mental limitations which preclude employment."

(*Id.*). Wells provides no further argument.

Notably, the ALJ considered similar records from the Pain and Wound Care Center when reaching his decision. (*See* tr. 450-509, 558-87). These records, like the newly submitted records, show Wells had negative straight leg raises, negative sciatic stretch tests, normal muscle tone, and only mild to moderate reduced range of motion in her neck and back, respectively. (Tr. 631, 634, 636). Both sets of records also support the ALJ's finding that Wells' medications were working with no reported adverse side effects. (Tr. 633-34, 636). Likewise, the newly submitted records from Rehab Partners merely show Wells received physical therapy in 2009, 2010, and 2011, prior to the alleged onset date. (Tr. 229, 640-46). Nothing in these records undermines the substantial evidence supporting the ALJ's determination as to Wells' physical limitations and capabilities.

As to the statement from Dr. Feist, the Appeals Council was permitted to discount the opinion because it was unsupported, conclusory, and inconsistent with other substantial evidence of record. *See* 20 C.F.R. 404.970(b), 416.1470(b); *See Kalishek v. Comm'r of Soc. Sec.*, 470 FF. App'x 868, 871 (11th Cir. 2012). The statement from Dr. Feist is a form on which he simply circled "yes" or "nor" in response to pre-printed questions. (Tr. 647). The form includes no explanation or support for those responses. (*Id.*). As such, the Appeals Council could discount the opinion. *See Burgin v. Comm'r Soc. Sec.*, 420 F. App'x 901, 903 (11th Cir. 2011).

The Appeals Council properly denied review after considering this evidence, as the evidence does not undermine the substantial evidence that supports the ALJ's decision.

### 2. The Remaining Submissions to the Appeals Council Were Not Chronologically Relevant

Wells also submitted the following records to the Appeals Council, but the Appeals Council declined to consider them because it found the records were not chronologically relevant:

- Preferred Pain Associates, dated April 7, 2016 – June 30, 2016 (Tr. 8-28)

- Rapid Care Medical Clinic, dated February 5, 2016 – April 11, 2016 (Tr. 29-41)
- Pain and Wound Care Center, dated December 1, 2015 (Tr. 52-54)

Wells argues the Appeals Council's failure to review these records[7] was an error because it rejected the records based solely on their date and did not properly consider whether they were chronologically relevant. (Doc. 12 at 52-60, doc. 18 at 10-13).

As noted above, the Appeals Council is only required to review additional evidentiary submissions if they are "new, material, and chronologically relevant." *See* 20 C.F.R. §§404.900(b), 416.1400(b); *Ingram*, 496 F.3d at 1261. Thus, the Appeals Council is not required to consider evidence that is cumulative or that does not relate to the time period the ALJ considered. *Stone v. Soc. Sec. Admin.*, 658 F. App'x 551, 553 (11th Cir. 2016). When the Appeals Council does not consider additional evidentiary submissions, the district court conducts a *de novo* review to determine whether such evidence satisfies the "new, material, and chronologically relevant" standard. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320-21 (11th Cir. 2015).

Wells admits the records are dated after the ALJ's decision, but argues "that does not necessarily make them chronologically irrelevant." (Doc. 12 at 59). That is correct; however, Wells fails to explain how these records from after the relevant time period are chronologically relevant. As to the records from Preferred Pain Associates, Rapid Care Medical Center, and Pain and Wound Care Center (dated December 1, 2015), these records primarily consist of continued treatment for Wells' reported pain and depression. (Tr. 8-41, 52-54). The Appeals Council is not required to consider evidence of continuing treatment dated after the ALJ decision, particularly

---

[7] To the extent Wells contends the Appeals Council failed to consider Dr. Feist's mental health statement (doc. 12 at 53), that assertion is false. As explained in the previous subsection, the Appeals Council considered this evidence and declined review.

where the doctor did not reference prior medical records and did not expressly state his examination findings were related to the relevant time period, *see e.g., Teigen v. Comm'r of Soc. Sec.*, 677 F. App'x 519, 524 (11th Cir. 2017), and there are no such references in these records. Furthermore, the records include treatment for new conditions, such as injuries to Wells' ankle, foot, and leg (tr. 12, 15, 31). For these reasons, the records are distinguishable from those in *Washington*, the case upon which Wells relies, wherein the additional evidentiary submissions were found chronologically relevant.[8] The Appeals Council did not err when it declined to consider these records because they were not chronologically relevant.

### D. The ALJ's Credibility Assessment

Wells contends "[t]he ALJ failed to state adequate reasons for finding [Wells] not credible." (Doc. 12 at 47-51). Credibility determinations are the province of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (citing *Moore v. Barnhart*, 405 F.2d 1208, 1212 (11th Cir. 2005). The ALJ must consider any relevant evidence in the record when assessing the credibility of a claimant's allegations, and when a credibility determination is crucial to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote v. Chater*¸ 67 F.3d 1553, 1562 (11th Cir. 1995) The reviewing court will not disturb a clearly articulated credibility finding supported by substantial evidence. *Id.* (citing *Foote*¸ 67 F.3d at 1562).

---

[8] In *Washington*, the claimant submitted to the Appeals Council a psychologist's evaluation and accompanying opinion about the degree of the claimant's mental limitations, which were prepared seven months after the ALJ's decision. 806 F.3d at 1319-20. The Eleventh Circuit concluded that the psychologist's materials were chronologically relevant because: (1) the claimant described his mental symptoms during the relevant period to the psychologist, (2) the psychologist had reviewed the claimant's mental health treatment records from that period, and (3) there was no evidence of the claimant's mental decline since the ALJ's decision. *Id.* at 1319, 1322-23 (limiting its holding to "the specific circumstances of this case").

The ALJ expressly found Wells' allegations regarding her physical and mental limitations were "not fully credible," explaining "[t]he evidence of record does not support the severity of symptoms and limitations alleged by [Wells] and the objectively determined clinical findings do not substantiate the asserted limitations from [Wells'] impairments that would preclude work activity within the [RFC] assessed." (Tr. 68).

Specifically, the ALJ specifically found Wells' allegations of an inability to walk more than twenty minutes, an inability to stand more than twenty minutes, an inability to sit more than twenty minutes, and a need to use a cane not entirely credible. (Tr. 68-69). The ALJ first noted Wells only received conservative treatment for her back impairments. (Tr. 68). Records from the Pain and Wound Care Center indicate Wells' medication helped and (contrary to her testimony) she had no adverse effects from the medication. (Tr. 68, 449-530, 558-98). These records further reveal that on June 29, 2015, Wells was noted as having only mildly decreased cervical range of motion, moderately decreased lumbar range of motion, and a positive Patrick's test.[9] (Tr. 68, 558-598). Upon examination, Wells was also noted as having a negative straight leg raising test, negative sciatic stretch test, and normal tone upon clinical testing. (*Id.*). These same examination findings were noted on August 3, 2015, except Wells was noted as having normal cervical range of motion. (*Id.*). The ALJ also cited treatment notes from Dr. Khusro, Wells' treating psychiatrist, that indicate Wells sat comfortably during appointments and had a non-ataxic gait. (Tr. 68, 531-35, 551-57).

The ALJ also considered Dr. Iyer's November 22, 2014 consultative examination. (Tr.

---

[9] The Patrick's test is also known as the FABER Test, which stands for Flexion, Abduction, and External Rotation. *See* www.Physio-pedia.com/FABER_Test. These three motions combined result in a clinical pain provocation test to find pathologies at the hip, lumbar, and sacroiliac region. *Id.*

68). That examination indicated Wells could squat partially, had shoulder abduction and anterior elevation to ninety degrees, had difficulty placing her hands behind her head and lower back, was tender over the interscapular muscles, and had fifty degrees of anterior flexion and twenty degrees of extension of her lumbar spine. (Tr. 68, 538-44). However, Dr. Iyer also noted that Wells was alert, in no acute distress, could stand up without assistance, had normal gait, could walk on her heels and tiptoes, used no assistive device, had full range of motion of her neck, normal shoulder adduction, internal rotation, and external rotation. (*Id.*). During the consultative examination, Wells demonstrated full range of motion of her elbows, wrists, hips, knees, and ankles; had full lateral flexion; and rotation motion of her lumbar spine. (*Id.*). Dr. Iyer noted she had normal grip strength, normal muscle power in her upper and lower extremities, no muscle atrophy, no motor or sensory deficits. (*Id.*). The ALJ also recognized that Dr. Bentley, her treating physician, noted Wells had little difficulty ambulating about the office area on November 26, 2014. (Tr. 545-50).

The ALJ also found the mental examination and treatment notes from Wells' treating psychiatrist did not support the severity of limitations from anxiety and depression Wells' alleged. (Tr. 69). As the ALJ notes, those treatment notes indicate that Wells' psychiatric medications helped her. (*Id.*). Although Wells' alleged she had to lie in bed all day and suffered from panic attacks about once a week (doc. 12 at 49-50), the record shows she was never hospitalized for psychiatric reasons and received a GAF score of 55 on November 7, 2014, which suggests only moderate symptoms or difficulty in social, occupational, or school functioning. (Tr. 63-64, 552)

Furthermore, a few weeks after Dr. Khusro prescribed Seroquel (on November 7, 2014) (tr. 552), Dr. Bentley evaluated Wells and found her to be in a cheerful mood, exhibiting no obvious evidence of anxiety, intact memory, and no limitations in communication. (Tr. 63, 69, 548). During her January 15, 2015 follow-up appointment with Dr. Khusro, Wells reported she

was doing "ok" and that the Seroquel had "really helped her." (Tr. 64, 554). Wells also reported that her depression was improved and she was less irritable. (*Id.*). Although Wells reported that she experienced a panic attack in March 2015, as the ALJ recognized, Wells also reported that she had stopped taking Seroquel because she lost the prescription. (Tr. 64, 556). Nevertheless, Dr. Khusro reported Wells was only "somewhat" anxious and dysphoric during the examination, but also reported her memory was intact. (Tr. 556-57). Dr. Khusro scheduled Wells for a two-month follow-up appointment and restarted her Seroquel, noting it had been previously effective. (Tr. 557).

Accordingly, there is substantial evidence to support the ALJ's decision to find Wells' disabling allegations less than credible.

### E.  Failure to Develop the Record – Side Effects of Pain Medicine

Wells contends the ALJ failed to develop the record concerning the side effects of her pain medication, pointing to her hearing testimony that her pain medicine has side effects, such as sleepiness and dizziness, and that she fell asleep twice during her breaks when she was working. ((Doc. 12 at 51-52, tr. 97).

Although the ALJ has an obligation to develop a full and fair record, there must be a showing of prejudice before the reviewing court can find that the claimant's right to due process was violated to such a degree that remand for further development is warranted. *Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997). Prejudice exists where the record contains evidentiary gaps that may cause the ALJ to reach an unfair determination due to the lack of evidence. *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995).

Wells relies on *Cowart v. Schweiker*, in which the Eleventh Circuit held that the ALJ failed in his duty to develop the record because he did not make any findings regarding the effect of the

plaintiff's prescribed medications on her ability to work. 662 F.3d 731, 737 (11th Cir. 1981). *Cowart* is distinguishable from the present case for several reasons. First, the plaintiff in *Cowart* was not represented by counsel, and the court recognized that the ALJ's "basic obligation to develop a full and fair record rises to a special duty when an unrepresented claimant unfamiliar with the hearing procedures appears before him." *Id.* at 735. Here, Wells was represented by counsel during the hearing. Specifically, when Wells' attorney asked her to elaborate regarding her side effects, Wells did not identify any instances of dizziness and explained she fell asleep in car during lunch breaks twice. (Tr. 97). Secondly, this case is distinguishable from *Cowart* because the ALJ made specific findings regarding side effects from medication. The ALJ noted that Wells alleged her medications caused her to become sleepy or dizzy (tr. 67) and found her allegations not credible based on records from the Pain and Would Care Center that indicate she reported no adverse side effects from her medication (tr. 68, 451, 453, 560-62, 575-76, 571-73, 578, 580). The ALJ further recognized Dr. Khustro, Wells' treating psychiatrist, noted Wells was tolerating her psychiatric medications without any adverse side effects. (Tr. 64, 554).

The ALJ's decision not to further develop the record as to Wells' medication side effects is supported by substantial evidence, as there were no evidentiary gaps that could have caused the ALJ to reach an unfair determination.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Wells' claim for a period of disability and disability insurance benefits as well as supplemental security income is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE**.

DONE this 16th day of September, 2018.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE